UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMA COMPANIES,<br><br>                  Plaintiff,<br><br>v.<br><br>GENOX TRANSPORTATION, INC., APPLIED LNG TECHNOLOGIES, LLC, LAIRD TRANSPORTATION, LLC, and DOES 1 through 20, inclusive,<br><br>                  Defendants.<br><br>AND RELATED CROSSCLAIMS, THIRD-PARTY COMPLAINTS, COUNTER-CLAIMS AND CROSSCLAIMS | Case No.: 20-CV-2540-GPC-AGS<br><br>**ORDER:**<br>**(1) DENYING WITHOUT PREJUDICE MOTION FOR SUMMARY JUDGMENT AGAINST PMA; AND**<br>**(2) GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST CLEANCOR**<br><br>**[ECF Nos. 83 & 92]** |

      Before the Court are Defendant Applied LNG Technologies, LLC's ("Applied") motions for summary judgment or summary adjudication on Plaintiff PMA Companies' ("PMA") Complaint, (ECF 83), and on Cross-Claimant CLEANCOR LNG, LLC's ("Cleancor") crossclaims, (ECF 92). PMA and Cleancor have filed their responses in

opposition to Applied's motions for summary judgment, (ECF 90 & 99), and Applied has filed its replies, (ECF 91 & 101). The Court held a motion hearing on Friday, October 28, 2022 and subsequently issued an order granting leave to PMA and Cleancor to file untimely affidavits under Federal Rule of Civil Procedure 56(d) explaining why they believed Applied's motions were premature. (ECF 106.) PMA and Cleancor have both filed affidavits in accord with Fed. R. Civ. P. 56(d), (ECF 108, 109), and Applied has filed its response, (ECF 114).

For the reasons set forth below, the Court DENIES the motion for summary judgment as to PMA and GRANTS the motion for summary judgment as to Cleancor's crossclaims against Applied.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Undisputed Facts, For The Most Part

On May 15, 2019 a fire incident occurred at Phillips Cattle Company, Inc. ("Phillips") near El Centro, California. (Compl. ¶ 1; ECF 84 at 2; ECF 99 at 4.[1]) PMA was and is Phillips' insurer. (Compl. ¶ 1.)

There was an above-ground liquid nitrogen gas ("LNG") storage tank on the Phillips property owned by Cleancor. (ECF 92-1 at 6; ECF 99 at 4.) Cleancor contracted with Applied to refill the tank. (ECF 83-1 at 2; ECF 99 at 4.) Applied "engaged" Defendant GenOx Transportation, Inc. ("GenOx") "to make [an LNG] delivery to the [Phillips'] grain milling facility." (Compl. ¶ 2; ECF 12 at 2 (Applied admitting to ¶ 2); ECF 99 at 4.) GenOx "provided the tractor and driver to transport the mobile tank and trailer to accomplish the transfer to refill the Cleancor tank." (ECF 83-1 at 3; *see* ECF 99 at 4.) Applied "supplied the mobile tank and trailer" used in the delivery, but GenOx was, to

---

[1] Page numbers are based on the CM/ECF pagination.

some extent, the independent contractor responsible for the LNG delivery and transfer.[2] (ECF 84 at 2; ECF 90-3 at 3; *see* ECF 99 at 4.)  The driver of the truck was Jason Laird, "an agent operating within the course and scope of his engagement for [GenOx]." (ECF 83-1 at 5-6; ECF 90-3 at 4; *see* ECF 99 at 4.)

Laird, "an employee of Laird Transportation, LLC, began to transfer LNG into the stationary storage tank container" at Phillips.  (ECF 12 at 2; *see* Compl. ¶ 10.)  A fire subsequently occurred causing damage to Phillips' property.  (Compl. ¶ 14; ECF 12 at 2 (Applied admission).)  PMA paid the insured Phillips for damages and other costs.  (Compl. 20; ECF 12 at 3 (Applied admission).)  Applied, PMA, and Cleancor do not dispute that "federal regulations . . . require detailed training of drivers who transport LNG."[3]  (ECF 99-3 at 6; ECF 90 at 4.)

PMA does not dispute that "Laird was never an employee of Applied and never had a contractual relationship of any type with Applied," (ECF 84 at 3; ECF 90-3 at 3), but Cleancor disputes this assertion, (ECF 99-3 at 4).

Neither Applied nor Cleancor dispute that their purchase agreement includes the following indemnification provisions:

> 15. <u>Indemnification.</u> Each Party shall defend and indemnify the other Party against any claim, demand, cause of action, suit, judgment, lien, damages, fines, penalties, and expenses

---

[2] Cleancor argues Applied maintained responsibility under the parties' purchase agreement. (ECF 92-3 at 4).  Cleancor points to the purchase agreement for support that "[t]o the extent the LNG [was] sold on a delivery basis, title and risk of loss of the LNG shall pass from [Applied] to [Cleancor] at the flange connection between the delivery vehicle and receiving storage facility." (*Id.*; ECF 99-3 at 3.)

[3] Because discovery is ongoing, Applied was able to include evidence that Laird had completed certain training as an exhibit in its motion for summary judgment against Cleancor, (ECF 92-3 at 27-41) but not in its summary judgment motion against PMA, (*see* ECF 83-2 (absence)).

(including reasonable attorneys' fees and litigation costs and expenses) asserted by any third party ("Indemnity Claim") for personal injury or death to any person, or damage to or loss of property, arising out of, in connection with, or incidental to the performance or nonperformance under this Agreement to the extent and in proportion to the negligent acts or omissions (including gross negligence or willful misconduct) of the Party, its members and Affiliates, and their respective directors, officers, employees, contractors and agents.

. . . .

20. <u>Hazardous Materials.</u> Both parties expressly recognize and acknowledge that the delivery and receipt of LNG hereunder requires the parties to handle hazardous substances and both parties agree that in so delivering and receiving and in storing, handling, transporting, offering and delivering for sale or use, exchanging, or using LNG purchased hereunder, the parties will in all respects exercise the strictest care required by all applicable safety procedures and rules specified in federal, state and local laws, regulations and ordinances . . . . Each party will indemnify, defend, protect, and hold harmless the other party, its successors and assigns, the manufacturer of the LNG, and their assigns, against all losses, claims, causes of action, penalties and liabilities arising out of the indemnifying party's failure to comply with the preceding sentences. (ECF 50-1 at 6-7.)

**B.     Facts Further Alleged By PMA**

PMA alleges that when Laird "started the attachment procedure to off load LNG into" the Cleancor tank, he did not attach the static discharge/ground line "in order to safely discharge static electricity during the transfer." (Compl. ¶¶ 10-11.) It further alleges that Laird "fully opened up the vapor release valve . . . in order to aid in the discharge of LNG" and "did not remain in the immediate area to monitor and oversee the unloading from the LNG tank truck." (Compl. ¶¶ 12-13.) PMA alleges that at some point a fire was "ignited when LNG escaped from the tank truck system (possibly through the vapor relief valve)." (Compl. ¶ 14.)

PMA seeks to hold the Defendants liable under theories of general negligence, negligence per se, and strict liability. (Compl. ¶¶ 16-32.) It alleges that each Defendant "had a duty to use due care and ordinary care in delivering, directing, supervising, overseeing, and implementing the physical transfer of LNG from the Applied LNG tank trailer into the storage tank at Phillips['] . . . milling facility." (Compl. ¶ 16.)

In response to interrogatories PMA contended that the fire was caused by the trailer being improperly grounded or bonded and that "[t]he LNG transfer process was [im]properly performed." (ECF 83-2 at 20.) In its description of "all facts" supporting its "complaint for damages against Applied," PMA explained that (1) Applied and GenOx "were under contract to deliver and transfer the LNG"; (2) Laird, "as an independent contractor, subhauler, agent, or representative of GenOx and/or Applied, arrived at Phillips . . . to deliver LNG"; and (3) "Laird . . . failed to properly transfer the LNG" because he did not "properly ground and or bond" the trailer, "created a very fast fill rate" by opening the internal pressure valve on the receiving tank, and was inattentive, causing the fire." (ECF 83-2 at 18-19.) PMA supported its contention that Laird was an agent of Applied at the time of the incident by alleging that "Applied contracted with GenOx to deliver" LNG to Phillips and GenOx hired "Laird and/or Laird Transportation, LLC . . . as an employee, agent, sub-hauler, or independent contractor." (ECF 83-2 at 20.) PMA reserved the right to amend all its responses, (*see id.* at 19-20) but has not done so.

C.     **Facts Further Alleged By Applied**

Applied asserts that "a certified DOT inspector" conducted a pressure test on the trailer and tank every five years, with the most recent test occurring on May 1 and 2, 2019; two weeks before the fire. (ECF 83-1 at 4.) The May inspection purportedly addressed the "relief valve, control valves, and an inspection of the grounding wire." (ECF 84 at 2; ECF 83-1 at 4.) Applied submits a declaration from its Chief Operating Officer, Brian Sagheb, attesting to these facts, as well as the DOT report. (ECF 83-2 at 3, 7-13 (Exhibit

1).)  Sagheb's declaration also points to a photograph taken after the fire of the grounding wire.  (*Id.* at 15.)  He states that the image "shows that the grounding spool is in place on the trailer, it shows that the grounding wire [is] attached to the spool, and it shows that the grounding wire had been pulled out as is typically done to connect a grounding wire during fuel transfer operations."  (*Id.* at 3.)

Applied also asserts that Laird was not Applied's agent or employee but was rather GenOx's agent.  (ECF 83-1 at 5-6.)

### D.  Procedural History And Facts Further Alleged By Cleancor

Cleancor was first brought into these proceedings via Applied impleading Cleancor for indemnity. (ECF 13.)  Cleancor initially brought counterclaims against Applied, (ECF 27), but after meeting and conferring Cleancor agreed to dismiss those claims without prejudice, (ECF 41).  Cleancor additionally filed crossclaims against GenOx, (ECF 38), which then filed counterclaims against Cleancor, (ECF 42).  GenOx's counterclaim prompted Cleancor to file crossclaims against Applied, which is the subject of the present motion for summary judgment. (ECF 50.)

In its crossclaims against Applied, Cleancor sought express contractual indemnity, equitable indemnity, damages for negligence, and declaratory relief. (ECF 50 at 10-12.)  Applied moved to dismiss these crossclaims in December 2021, (ECF 54), and the Court granted Applied's motion to dismiss the claim for equitable indemnification but denied the motion as to the remaining three crossclaims, (ECF 58).

Cleancor alleges that Paragraph 15 in the purchase agreement "creates an affirmative duty for Applied to be responsible for the negligent act or omissions of Applied and its contractors, including GenOx and Laird." (ECF 99-3 at 13.)  Cleancor also points to provisions in Paragraph 20 requiring that Applied use "the 'strictest care' when transporting, delivering, and offloading LNG."  (ECF 99 at 6 (quoting ECF 50-1 at 7).)

Cleancor does not dispute that Laird received the required training and certification to meet federal standards for delivering LNG.  (ECF 99-3 at 6.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the case and a dispute is "genuine" if there is evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' " *Id.* at 252 (alteration and emphasis in original) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  If the moving party fails to meet this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).  Parties may support their assertion that a fact is or is not disputed by pointing to "depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record. Fed. R. Civ. P. 56(c)(1)(A). Parties "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Under Rule 56(d), when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present [essential] facts, . . . the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Ninth Circuit has interpreted this rule as requiring the requesting party to "show [that]: (1) it has set forth in affidavit [or declaration] form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing Fed. R. Civ. P. 56(f) before 2010 amendment moved provision to subdivision (d) "without substantial change")); *see also Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 (9th Cir. 2009) (affirming grant of summary judgment "more than two years after the action was filed and much discovery had been conducted" because there was "no plausible basis to believe that the information sought exist[ed]"). The opposing party has the additional burden of demonstrating diligent pursuit of "its previous discovery opportunities." *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999); *see also Martinez v. Columbia Sportswear USA Corp.*, 553 Fed.Appx. 760, 761 (9th Cir. 2014) (including party diligence in list of considerations on Rule 56(d) motion). The Court may properly deny further discovery and consider summary judgment if the party fails to comply with these requirements. *Fam. Home*, 525 F.3d at 827.

Once the moving party has satisfied its initial burden, the nonmoving party cannot rest on the mere allegations or denials of their pleading but must "go beyond the pleadings

and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.,* 477 U.S. at 324. If the nonmoving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court must not engage in "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts"; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

### III. DISCUSSION: APPLIED'S MOTION FOR SUMMARY JUDGMENT AGAINST PMA IS DENIED WITHOUT PREJUDICE FOR BEING PREMATURE.

Applied argues that PMA has only two theories of liability against Applied, and that neither can survive a motion for summary judgment. First, Applied asserts that the only contention about the tank and trailer used to deliver the LNG is that it "was not properly grounded or bonded." (ECF 83-1 at 4 (quoting ECF 83-2 at 20 (PMA interrogatory response)).) Because grounding was "not a condition of the tank and trailer, but an action performed by the driver," Applied argues it cannot be liable under any theory of defective equipment. (*Id.*) Second, Applied argues that it cannot be held vicariously liable for Laird's actions because he was neither its employee or agent, and Applied had no reason to believe he or GenOx were incompetent. (*Id.* at 5-6.)

PMA argues that Applied's motion for summary judgment is premature. (ECF 90 at 8-9.) At the time of Applied's motion for summary judgment, Laird evaded service and

thus had not been deposed. ECF 108 at 6; *see* ECF 117 (Laird's first docket filing). PMA argues that Laird evaded service of process and that GenOx has not provided more than a PO Box address for him. (ECF 90 at 8.) PMA asserts that once it is able to depose Laird, he "could say that the ground reel was not working and he could not use the same"; suggesting Applied may have had defective equipment. (*Id.* at 9.) PMA identifies additional depositions and discovery work it would like to complete before the Court considers Applied's motion for summary judgment. (*Id.*)

The crux of PMA's Rule 56(d) declaration, (ECF 108 ("Lar. Decl.")), is that PMA still needs to serve and depose Laird, who will identify "what steps were taken involving the LNG before it caught fire" and he may claim there was something wrong with Applied's equipment. (Lar. Decl. ¶¶ 27-28.) Although PMA does not indicate which facts exist that would tend to show that Applied's equipment was defective, nor does it address how Applied could be held liable for the actions of an independent contractor, (*see* Lar. Decl. (absence)), Laird's recent appearance in the proceedings suggests sufficient diligence by the parties to uncover whether these facts exist. Laird's deposition and responses to interrogatories may reveal some evidence that would maintain PMA's action against Applied. The Court accordingly finds that Applied's motion for summary judgment as to PMA is premature.

In the interest of justice and fairness, the Court DENIES Applied's motion for summary judgment as to PMA without prejudice. So as to encourage continued diligence by the parties, the Court allows Applied to refile its motion for summary judgment as to PMA after ninety (90) days from the date of this order, or upon leave from the Court if good cause arises for an earlier date.

## IV.  DISCUSSION:  APPLIED'S MOTION FOR SUMMARY JUDGMENT AGAINST CLEANCOR IS GRANTED.

Applied argues that "the only relief Cleancor can seek against Applied in this case is indemnity from Applied for any indemnity Cleancor owes to GenOx" because at this time Cleancor is not a defendant and only Applied and GenOx are seeking indemnity from Cleancor. (ECF 92-1 at 7.)  Applied similarly argues that Cleancor cannot recover on its negligence or contractual indemnity claims because "[t]here is no factual basis" supporting either that "[t]here were defects in Applied's equipment" or that Applied failed to "ensure that its agents were well trained and knew the proper procedures." (ECF 92-1 at 9 (negligence claim); *see also id.* at 14-15).)  Applied also frames these claims for negligence and contractual indemnity as circular "indemnity for indemnity" claims. (*Id.* at 12, 16.) Applied concludes that summary adjudication on the contractual indemnity and negligence claims will resolve Cleancor's claim for declaratory relief. (*Id.* at 21-22.)

### A.  Timeliness Of Applied's Summary Judgment Motion Against Cleancor

Cleancor argues that Applied's motion for summary judgment is premature. (ECF 90 at 8-9; ECF 99 at 13-14.)  It argues that Laird has evaded service of process and that GenOx has not provided more than a PO Box address for him. (ECF 99 at 14.)  Cleancor points to purchase agreement provisions indicating that Applied continued to be responsible for the delivery of LNG until the transfer into Cleancor's tank was complete, and that Applied is required to indemnify, defend, and hold harmless Cleancor. (ECF 99 at 14, 15-16.)

Cleancor's Rule 56(d) declaration, (ECF 109 ("Cas. Decl.")), does not raise any factual issues or discovery concerns that would persuade the Court to deny or otherwise defer Applied's motion for summary judgment.  Cleancor's declaration hinges on the ambiguity around whether and the extent to which Applied had agency over Laird and GenOx, (Cas. Decl. ¶¶ 8-12, 18); that Applied has not been sufficiently forthcoming with

providing information about witnesses and companies with relevant discoverable information, including Four State Cryogenics, (*Id.* ¶¶ 8, 16-17); and that GenOx has also been evasive, (*Id.* ¶¶ 11-12). But Cleancor fails to point to any material fact that would allow it to recover against Applied given that Cleancor's only liability in these proceedings is for its own negligence. Applied's motion for summary judgment as to Cleancor is not premature.

### B.  Cleancor's Claim For Negligence Against Applied

Cleancor's third cause of action against Applied accuses Applied of negligence. In relevant parts, Cleancor asks that it "be awarded damages against Applied for all damages and defense fees and costs that Cleancor must pay to any party herein by reason of the matters alleged in the Complaint and the GenOx Cross-Complaint and other causes of actions alleged against Cleancor in this action," as well as for "any amounts Cleancor may be caused to pay." (*Id.* at 12-13 ¶¶ 2-3.) Cleancor is not a defendant in PMA's Complaint and instead is defending claims for indemnity and declaratory relief via Applied's third party claim, (ECF 13), and indemnity, declaratory relief, and contribution via GenOx's counterclaim, (ECF 42). (*See* ECF 99-3 at 2 (undisputed fact).) Cleancor does not appear to allege it has suffered or will suffer any damages other than defense fees and costs to indemnify GenOx and Applied. (*See* ECF 50 at 9-13 (absence other than reference to "damage to property owned by Phillips," (*Id.* at 9 ¶ 1) and PMA describes extent of Phillips' damage only as to its own property and lost income (*See* Compl. ¶¶ 14, 20)).)

Applied argues that Cleancor's negligence claim is really a claim for equitable indemnity because "the only relief sought is indemnity for any money that Cleancor may have to pay in indemnity to GenOx." (ECF 92-1 at 9.) Applied argues equitable indemnity is precluded by the parties' written indemnity provisions. (*Id.* at 9-10.) Cleancor disagrees, emphasizing its allegation that Applied breached its "duty to ensure that those it hired to act as its agents . . . were properly trained . . . . resulting in the fire and damages to

Cleancor." (ECF 99 at 6.) Cleancor again does not refer to any specific damages it has suffered beyond possible costs associated with indemnification to other parties. (*See id.* at 5-13 (absence).) Indeed at the hearing Cleancor emphasized that it "just want[s] to make sure that the [alleged] independent negligence of Applied is not precluded [from the GenOx proceedings], and that [Cleancor] couldn't recover [its] fees." (TR at 21.) When the Court asked, "how can it be that Applied is dragged into the litigation between GenOx and [Cleancor], to the extent that GenOx [is] only seeking to hold [Cleancor] accountable for the extent of [Cleancor's] negligence," Cleancor was "unsure." (TR at 22.)

When "the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity."[4] *Rossmoor Sanit'n, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628, 532 (1975); *see also Maryland Cas. Co. v. Bailey & Sons, Inc.*, 35 Cal. App. 4th 856, 873–74 (1995) (applying rule from *Rossmoor* to affirm summary judgment against plaintiff's equitable indemnity claim where the parties had express indemnification provision). "Equitable indemnity principles govern the allocation of loss or damages among multiple tortfeasors whose liability for the underlying injury is joint and several." *Expressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc.*, 86 Cal. App. 4th 1135, 1139 (2001).

It is undisputed that the sale agreement between Applied and Cleancor addresses indemnity. (ECF 99-3 at 3, 6-8.) California case law is clear that the doctrine of equitable indemnity does not apply when an express indemnity clause exists. Although Cleancor

---

[4] While a contractual indemnity provision delineates a party's "duty to make good any loss, damage, or liability incurred by another," equitable indemnity is "[a] doctrine allowing a defendant in a tort action to allocate blame to a codefendant or cross-defendant, and thereby to proportionally reduce legal responsibility, even in the absence of contractual indemnity." *Indemnity*, Black's Law Dictionary (11th ed. 2019).

labeled its third claim for relief as a negligence claim, (ECF 50 at 11), and purports to seek "recovery for the damages it has incurred and continues to incur as a result of Applied's negligent conducts," (ECF 99 at 7), the only relief it asks for is that of indemnification, (*see* ECF 50 at 12-13 (asking only that Applied indemnify Cleancor)).  Cleancor quotes a California Supreme Court case that lends some credence to the idea Cleancor could recover for Applied's negligence:  "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of its rights.' (Sec. 1708, Civ. Code.)  This duty is independent of the contract . . . ."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (*See* ECF 99 at 7.)  However, given that here the sales agreement specified what to do in the event one party was negligent, "including gross negligence or willful misconduct," (ECF 50-1 at 6-7), and Cleancor structured its complaint such that it only appears to seek relief in the form of indemnification, the quote in the context of the rest of the opinion does not preclude summary judgment: "Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time."  *Id.* at 515, 517–18 (holding defendant legally responsible only for breach of contract, not tort, despite defendant satisfying elements for tort of contract interference).

The Court concludes that there is no genuine dispute as to any material fact relevant to Cleancor's third cause of action against Applied and Applied is entitled to summary judgment as a matter of law.  The Court GRANTS summary adjudication to Applied against Cleancor's third cause of action.

### C. Cleancor's Claim For Express Contractual Indemnity Against Applied

Cleancor seeks express contractual indemnity against Applied.  The crossclaim asserts that because Cleancor's purchase agreement with Applied assigned risk of loss to Applied until the LNG passed from the delivery truck and tank, "through the flange into

the storage facility," and included indemnification and defense requirements when one party or its agents were negligent, Applied must indemnify and defend Cleancor for the negligent acts and omissions of Applied or its agents or contractors. (ECF 50 at 10-11.)

In its motion for summary judgment, Applied maps out the means by which Cleancor could be seeking indemnity, and why each reason fails. It explains first that Applied did not deliver or transfer the LNG, but that the entity and person that did, GenOx and Laird, were an independent contractor and non-agent/non-employee, respectively. (ECF 92-1 at 10-11, 15.) Second that because the Indemnification clause of their contract, Paragraph 15, contains a "mutual obligation to indemnify only 'to the extent and in proportion to the negligent acts or omissions' of the parties," the purchase agreement "expressly requires proof of fault and it limits indemnity to the relevant fault of the indemnitor." (ECF 92-1 at 16-17 (quoting ECF 50-1 at 6).) *See Rossmoor Sanit'n, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 628-29 (1975) (requiring "clear and explicit" terms for indemnification agreement to cover "an indemnitee's own negligence"). Additionally, because Cleancor's crossclaims against Applied are asking Applied to defend and indemnify Cleancor against GenOx's counterclaims, Applied explains that there is no situation in which it will be required to indemnify Cleancor for payments to GenOx: GenOx and its driver Laird will be found 100% at fault, 0% at fault, or some percentage in-between for which Cleancor may be liable for equitable indemnification to GenOx for *Cleancor's* own negligence. (*Id.* at 17-18; *see* ECF 42 at 6-10.) Indeed, GenOx's causes of actions against Cleancor ask that it be indemnified for *Cleancor's* own conduct, not that of another party. (ECF 42 at 8-10 ¶¶ 12, 14-15.) Cleancor does not respond to this argument, (*see* ECF 99 (absence)), and similarly characterizes the indemnification provision in Paragraph 15 as requiring "both parties to indemnify and defend the other to the extent and in proportion to the negligent acts or omissions of the other party and its contractors and agents," (ECF 50 at 10 ¶ 9).

GenOx's claims against Cleancor seek indemnity for Cleancor's negligence or fault. In a hypothetical scenario where Applied's equipment was defective or Applied was directly or vicariously liable for GenOx's or Laird's actions, GenOx's indemnity claims against Cleancor will still only recover damages to the extent Cleancor was negligent or at fault.  There is no material fact in dispute that will change this result.  When asked about this at the hearing, Cleancor agreed but was concerned about preserving its ability to present evidence as to Applied's negligence in future proceedings and recovering costs of litigation if it is determined Applied was negligent in training Laird or had defective equipment. (TR at 19, 21–22.)  Because the Court strives to "secure the just, speedy and inexpensive determination of every action" in accordance with the Federal Rules of Civil Procedure, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), and Cleancor does not adequately identify any scenario in which it would able to recover against Applied in the present circumstances, (*see* TR at 22-24), the Court GRANTS Applied's motion for summary judgment as to Cleancor's first claim for relief.

### D.     Cleancor's Claim For Declaratory Relief Against Applied

Cleancor's fourth claim asks for declaratory relief concerning Applied's obligation to indemnify and defend Cleancor as provided in their purchase agreement.  Because this fourth cause of action is duplicative of those already adjudicated and cannot stand on its own, *see Ochs v. Pacificare*, 115 Cal. App. 4th 782, 794 (2004) (affirming demurrer of "causes of action for injunctive and declaratory relief" that "were wholly derivative of [plaintiff]'s claims for statutory violations"); *California Ins. Guarantee Assn. v. Superior Court*, 231 Cal. App. 3d 1617, 1623-24 (1991) ("Generally, an action in declaratory relief will not lie to determine an issue which can be determined in the underlying tort action."), the Court GRANTS Applied's motion for summary adjudication as to the fourth claim.

## VI. CONCLUSION

For the reasons explained above, the Court DENIES Applied's motion for summary judgment as to PMA's complaint without prejudice, and GRANTS Applied's motion for summary judgment as to Cleancor's crossclaims against Applied. Applied may refile its motion for summary judgment as to PMA after ninety (90) days from the date of this order, or upon leave from the Court if good cause arises for an earlier date.

**IT IS SO ORDERED.**

Dated: January 11, 2023

Hon. Gonzalo P. Curiel
United States District Judge